IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT R. MCLAIN,**<br>    Petitioner, | No. 1:20-CV-01535 |
| v. | (Judge Rambo) |
| **CATRICIA HOWARD,**<br>    Respondent. | |

## MEMORANDUM OPINION

Presently before the Court is Petitioner Robert R. McLain's petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2241. (Doc. 1.)  Petitioner seeks release to home confinement due to the Covid-19 pandemic and alleges that the conditions of confinement at FCI Allenwood, where he is presently incarcerated, are unsafe. (*See id.*)  Petitioner has also filed motions for injunctive relief, in which he seeks release from confinement, and a motion to amend his petition to assert a claim for monetary damages. (Docs. 4, 7, 10).  Respondent submitted an answer, arguing, *inter alia*, that Petitioner has failed to exhaust his administrative remedies prior to filing his petition. (Doc. 8 at 1.)  Petitioner has not filed a reply, and the time for doing so has now expired. (*See* Doc. 11.)  For the reasons that follow, the Court will deny the petition and the pending motions.

**I.    BACKGROUND**

Petitioner is presently incarcerated at the Federal Correctional Institute at Allenwood (Medium) in White Deer, Pennsylvania. (Doc. 13 at 2.)  Petitioner was

convicted of conspiracy to distribute and possession with intent to distribute fentanyl and was sentenced to a sixty-five month term of imprisonment in the United States District Court for the District of New Hampshire. (*Id.*) Petitioner has a projected release date of July 14, 2022. (*Id.*)

On or about March 30, 2020, Petitioner filed an inmate request to staff, seeking to be released under the CARES Act due to Covid-19. (Doc. 1 at 16.) His request was considered but denied. (*Id.*) In the denial of his request, Petitioner's unit manager explained that the BOP has identified ten criteria which an inmate must meet to be considered for home confinement. (*Id.*) The unit manager explained that Petitioner failed to meet all ten of the criteria because his PATTERN risk score is high. (*Id.*)

Petitioner also filed an inmate request to staff seeking a compassionate release to home confinement due to a medical issue putting him at higher risk for Covid-19. (Doc. 1 at 15.) His request was considered but denied. (*Id.*) Specifically, the denial noted that petitioner was only 28 years old, and that while he had medical issues, he was not disabled or unable to perform daily living activities. (*Id.*) In addition, his medical condition did not diminish his ability to function in prison. (*Id.*)

Petitioner has filed three administrative remedies prior to filing the instant petition, however he has not appealed any of these administrative remedies to the BOP's Central Office. (Doc. 13 at 6-7.)

Petitioner filed the instant petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking release to home confinement due to the "imminent danger" he faces from "unsafe living conditions" at FCI Allenwood. (Doc. 1 at 8.) Specifically, he alleges that Respondent Howard has exposed Petitioner to an easily preventable risk, that she had the tools to prevent his exposure of this risk by placing him in home confinement, but that she failed to do so. (*Id.* at 10.) Petitioner also alleges prison officials are not providing him with reasonable safety because he cannot socially distance and that he is breathing "recycled" air from the HVAC system. Further, he alleges, that FCI Allenwood will not test the corrections officers daily to determine whether they have contracted Covid-19. (*Id.*) Petitioner also alleges that his mental health puts him at risk for Covid-19 and that he previously smoked cigarettes for eleven years. (*Id.* at 11.)

Finally, Petitioner states that in February 2020, he contracted the "flu" and that since then, he has been experiencing irregular heartbeat, insomnia, headaches, and weakness. He is concerned that he may have long term complications from Covid-19. (*Id.* at 12.) Petitioner states that he was never tested for Covid-19, and that some inmates have died, and they were not tested for Covid-19 after they died. (*Id.* at 12-13.)

Respondents have filed an answer arguing that Petitioner has failed to exhaust his administrative remedies as to his claims and that even if he had, Petitioner has

failed to demonstrate his right to relief as to his request for home confinement or an Eighth Amendment conditions of confinement claims. (Doc. 13.) Respondent has carefully detailed all of the Covid-19 mitigation efforts that were put in effect at FCI Allenwood pursuant to CDC recommendations and government directives. Specifically, FCI Allenwood has been running on modified operations, inmate gatherings are limited, and social distancing is required as much as possible. (Doc. 13-1 at 2.) In addition, cleaning supplements are available to inmates and staff, the use of telephones, computers, laundry, food services, and showers have been modified, and "high touch" areas are cleaned regularly. (*Id.* at 2-3.)

To reduce the potential spread of the virus, inmates from different units are not allowed to mix, and staff members are to remain at their posts except for emergencies. (*Id.* at 3.) Staff members are checked daily before entering FCI Allenwood, including a temperature screening and symptom check. (*Id.*) Inmates and staff are required to wear masks. (*Id.*) If an inmate has to move between institutions, Covid-19 testing is done before and after the transfer. (*Id.*) Regardless of an incoming inmate's test result, all new inmates must quarantine for fourteen days prior to entering general population at FCI Allenwood. (*Id.*)

When an inmate has a fever or displays other potential Covid-19 symptoms, they are placed in isolation and provided with a rapid Covid-19 test. (*Id.*) In the case of a negative result, the test is confirmed with a nasal swab lab test. (*Id.*) If the

test is positive, the inmate remains insolation until they test negative and have been cleared by the medical staff following CDC recommendations for breaking isolation. (*Id.*)  Finally, the institution employs contact tracing of inmates and staff, and those with close contact to someone who has the virus is tested, with mandatory isolation or quarantine for those who are symptomatic.  (*Id.* at 3-4.)  FCI Allenwood Medium has had no deaths resulting from Covid-19.  (Doc. 13-1 at 2.)  *See also* "BOP Covid-19 Cases," *available at* https://www.bop.gov/coronavirus/.

## II. DISCUSSION

Petitioner is seeking transfer to home confinement due to the Covid-19 pandemic.  Respondent argues that the petition should be denied because (1) Petitioner failed to exhaust his administrative remedies; (2) the BOP's decision to deny Petitioner's request for home confinement is not subject to judicial review; (3) Petitioner is not a priority candidate for home confinement; and (4) Petitioner's continued incarceration does not violate the U.S. Constitution.  The Court will address each argument *seriatim*.

### A. Exhaustion of Administrative Remedies

A prisoner must exhaust all stages of the administrative remedy system prior to filing a habeas petition under 28 U.S.C. § 2241.  *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996); *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981) ("A federal prisoner ordinarily may not seek habeas corpus relief until

he has exhausted all administrative remedies."); *Arias v. U.S. Parole Comm'n*, 648 F.2d 196 (3d Cir. 1981). Requiring inmates to exhaust their remedies serves a number of purposes, such as "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62. Exhaustion of administrative remedies requires compliance with an agency's deadlines, other critical procedural rules, and all steps of the available administrative process. *Woodford v. Ngo*, 548 U.S. 81, 90-92 (2006); *Jones v. Bock*, 549 U.S. 199, 218 (2007) (proper exhaustion defined by applicable prison requirements).

In order to exhaust administrative remedies, a federal prisoner must first attempt to informally resolve the dispute with institution staff. *See* 28 C.F.R. § 542.13. Then, if informal resolution efforts fail, the prisoner may raise his complaint to the warden of the institution in which he is confined. *See* 28 C.F.R. § 542.14. If the warden denies the administrative remedy request, the prisoner may next file an appeal with the regional director within twenty days from the date of the warden's response. *See* 28 C.F.R. § 542.15. Finally, if the regional director denies the appeal, the prisoner may then appeal that decision to the general counsel of the Federal Bureau of Prisons within thirty days from the date of the regional director's response.

*See* 28 C.F.R. § 542.15. The requirement that prisoners first exhaust their administrative remedies applies even for requests for home confinement due to the Covid-19 pandemic. *See*, *e.g.*, *Cordaro v. Finley*, No. 3:10-CR-75, 2020 WL 2084960, at *5 (M.D. Pa. April 30, 2020).

Here, the record demonstrates that Petitioner has failed to exhaust his administrative remedies because he failed to appeal his grievances to the final level of review. Although futility may be an exception to the exhaustion of administrative remedies, *see Lyons v. U.S. Marshals*, 804 F.2d 202, 205 (3d Cir. 1988), even if Petitioner were to argue that exhaustion would be futile, over the past year, the district courts have repeatedly held that prisoners must still exhaust their administrative remedies regarding home confinement and that exhaustion in such a circumstance is not futile, even in the context of a pandemic. *See*, *e.g.*, *Gottstein v. Finley*, No. 20-cv-935, 2020 WL 3078028, at *3-4 (M.D. Pa. June 10, 2020); *Jackson v. White*, No. 20-cv-919, 2020 WL 3036075, at *7 (M.D. Pa. June 5, 2020). Furthermore, the Third Circuit recently reiterated that "strict compliance with . . . exhaustion requirement[s] takes on added—and critical—importance" during the COVID-19 pandemic "[g]iven the BOP's shared desire for a safe and healthy prison environment." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Petitioner has failed to exhaust his administrative remedies regarding his request to be transferred to home confinement, and the petition must be denied for that reason.

## B. Request for Home Confinement

Even if Petitioner had exhausted his request for home confinement, the Court could not grant his request because "the CARES Act provides the discretion for determining early home confinement release solely to the BOP." *United States v. Mathews*, No. 2:86-cr-197, 2020 WL 6781946, at *2 (E.D. Pa. Nov. 18, 2020). *See also Adams v. Trate*, No. 20-cv-237, 2020 WL 7337806, at *2 (W.D. Pa. Dec. 4, 2020) (collecting cases); *United States v. Robinson*, No. 4:07-cr-389-10, 2020 WL 5793002, at *5 n.2 (M.D. Pa. Sept. 28, 2020) (noting that "the Court does not have the authority to grant [a request for home confinement] in that the determination of an inmate's place of incarceration is committed to the discretion of the BOP director").

On March 26, 2020, the Attorney General issued a memorandum encouraging the BOP to prioritize home confinement in response to the Covid-19 pandemic. *See* "Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic," *available at* https://www.bop.gov/coronavirus/docs/bop_memo_home_ confinement.pdf. To determine whether home confinement should be authorized, the Attorney General directed the BOP to consider "the totality of circumstances for each individual inmate, the statutory requirements for home confinement," and the following factors: (1) the age and vulnerability of the inmate to COVID-19, in accordance with CDC guidelines; (2) the security level of the facility currently

8

holding the inmate; (3) the inmate's conduct in prison; (4) the inmate's score under the Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN"); (5) whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety; and (6) the inmate's crime of conviction and the danger posed by the inmate to the community. *See id.*

On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was implemented, which authorized the Attorney General and the BOP to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" due to the COVID-19 pandemic. Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020). The CARES Act granted additional discretion to the Attorney General and the BOP to expand the home confinement program, but it did not require the BOP to release all at-risk, non-violent inmates on home confinement. Because "Congress has not identified any further circumstance in which the Bureau either must grant" home confinement "or is forbidden to do so . . . all [the Court] must decide is whether the Bureau, the agency empowered to administer" the home confinement program, "has filled the statutory gap 'in a way that is reasonable.'" *Lopez v. Davis*, 531 U.S. 230, 242 (2001) (quoting *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995)).

Under the standards set forth in the Attorney General's memoranda, Petitioner is not a priority candidate for home confinement because he has a high risk of recidivism according to his PATTERN score and is incarcerated at a medium security institution. Petitioner cannot demonstrate that the BOP's interpretation of the CARES Act is unreasonable as applied to him, and, therefore, Petitioner's request for home confinement must be denied. *See Gonzalez v. Howard*, No. 20-cv-1992, 2021 WL 65989, at *5 (M.D. Pa. Jan. 7, 2021) (finding BOP's interpretation of CARES Act reasonable because prisoner was incarcerated at a medium security institution and had a medium risk of recidivism according to his PATTERN SCORE).

### C. Eighth Amendment Claim

Petitioner also alleges in the petition that he suffers from "unsafe living conditions," which the Court will construe as an Eighth Amendment conditions of his confinement claim.[1]  (*See* Doc. 1 at 8.)

---

[1] The United States Court of Appeals for the Third Circuit recently concluded that immigration detainees could proceed under § 2241 to challenge allegedly unconstitutional conditions of confinement due to the Covid-19 pandemic. *See Hope v. Warden York Cty. Prison*, 972 F.3d 310, 324-25 (3d Cir. 2020). The Third Circuit cautioned, however, that it was "not creating a garden variety cause of action." *Id.* at 324. In light of *Hope*, the Court will assume without deciding that it has jurisdiction under § 2241 to consider a petitioner's Covid-19 conditions of confinement claim. See, e.g., *Gonzalez*, 2021 WL 65989, at *3 n.2.

The Eighth Amendment guarantees a prisoner's right to be free from "cruel and unusual punishments" while in custody. U.S. Const. amend. VIII. *See Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) (quoting *Whitley v. Albers*, 475 U.S. 312, 318 (1986)). A prisoner asserting a conditions of confinement claim must allege that (1) the deprivation asserted must be "sufficiently serious" to violate the Constitution, and (2) the prison official or officials responsible for the deprivation "must have a sufficiently culpable state of mind." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The second element can be proven by establishing that prison officials "acted with deliberate indifference to the inmate's health or safety or [to] conditions of confinement that violated the inmate's constitutional rights." *Id.* (citation omitted). Stated differently, prison officials must "both know of and disregard an excessive risk to inmate health or safety" or a violation of the inmate's constitutional rights. *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (citations omitted).

"[T]he prison setting raises unique concerns regarding the spread of the COVID-19 virus since, by their very nature, prisons are confined spaces unsuitable for social distancing." *Rodriquez-Fransisco v. White*, No. 20-cv-1076, 2020 WL 3260766, at *3 (M.D. Pa. July 24, 2020). Despite these unique concerns, officials at FCI Allenwood have undertaken extensive efforts to mitigate the risk of Covid-

19 and to keep inmates there safe.  Nothing in the record suggests that FCI Allenwood is not complying with the modified parameters of operation outlined in Respondent's answer.  A review of the BOP's Covid-19 website provides that FCI Allenwood Medium has experienced no deaths due to the pandemic and that every inmate or staff member who has contracted it has recovered.  Despite Petitioner's allegation, social distancing is mandated to the extent possible within the institution and units are prevented from mixing with other units.  Further, although staff members do not receive daily Covid tests, they do receive daily temperature and symptom checks.  The Court can discern no deliberate indifference on the part of prison officials at FCI Allenwood.  *See Rodriguez-Francisco*, 2020 WL 4260766, at *5 ("[Petitioner] has not identified, let alone proven, any official conduct that exhibits deliberate indifference to the health or safety or prisoners during this unprecedented worldwide pandemic.")  For this reason, petitioner's Eighth Amendment claim fails and must be denied.

      **D.     Motion to Amend**

Plaintiff has filed a motion to amend his petition to include a claim of monetary damages.  (Doc. 10.)  The Court will deny the motion as Petitioner has failed to exhaust his administrative remedies, and he has failed to establish a violation of the Eighth Amendment.  Petitioner is free to file a new action that

includes a request for monetary damages after he exhausts his administrative remedies if he believes a new Eighth Amendment violation has occurred.

### E. Motions for Injunctive Relief

Petitioner's requests for injunctive relief in order to be released to home confinement also fail for the same reasons discussed *supra*. The court considers four factors to determine whether temporary or preliminary injunctive relief is appropriate. The movant must first establish a likelihood of success on the merits and irreparable harm. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Under the first factor, the movant must show that "it can win on the merits," meaning "significantly better than negligible but not necessarily more likely than not." *Id.* After the first two factors are satisfied, the Court may consider the third and fourth factors: the potential for harm to others if relief is granted, and whether the public interest favors injunctive relief. *Id.* at 176, 179.

Petitioner has failed to establish that his claims will win on the merits because he has failed to exhaust his administrative remedies and has failed to establish a violation of the Eighth Amendment or his right to release on home confinement. Thus, it cannot be said that Petitioner can win on the merits. The motions for injunctive relief will be denied.

## III.   CONCLUSION

For the reasons set forth above, the petition, the motion to amend, and the motions for injunctive relief will be denied.  An appropriate Order follows.


                                                        S/Sylvia H. Rambo
                                                        United States District Judge

Dated:  June 10, 2021